OPINION OF THE COURT
Deborah Kaplan, J.
The defendant stands charged with criminal sale of marijuana in the fourth degree (Penal Law § 221.40) and a violation of Public Health Law § 3383 (2), which prohibits the sale of “imitation controlled substances.” The information alleges that at about 4:10 p.m. on November 2, 2004, near the intersection of 140th Street and Broadway in Manhattan, an undercover police officer observed the defendant speaking with two separately-charged individuals, Anthony Thomas and Louis Clark. The defendant instructed Thomas and Clark to follow him, and the three men walked to the corner, where the defendant left the other two men. The information further alleges that when the defendant returned, Clark handed some money to Thomas, who added some money and handed all of it to the defendant. The defendant, in turn, handed Thomas “a number of small white objects.” The defendant instructed Thomas to put the white objects in his pants, and Thomas complied. According to the information, a detective thereafter recovered “four bags of a white, rock-like substance (field-tested negative) from underneath Anthony Thomas in a police van and one bag of marijuana from where Thomas threw it to the ground.” The People have filed two field test reports, one which states that the four bags were tested with negative results for cocaine and a second which states that the single bag of marijuana was tested with positive results for marijuana.
In his omnibus motion, the defendant, inter alia, moves to dismiss the information as facially insufficient. Upon consideration of the facts of this case and the relevant law, the defendant’s motion is granted to the extent that the count charging criminal sale of marijuana in the fourth degree is dismissed.
*440 I. Criminal Sale of Marijuana in the Fourth Degree
A criminal court information is insufficient on its face, and subject to dismissal, unless it contains nonhearsay factual allegations which, if true, establish every element of the crime charged and provides reasonable cause to believe that the defendant committed it. (See CPL 100.40 [1]; 100.15 [3]; People v Alejandro, 70 NY2d 133 [1987]; People v Dumas, 68 NY2d 729 [1986].) “A person is guilty of criminal sale of marihuana in the fourth degree when he knowingly and unlawfully sells marihuana” (Penal Law § 221.40). “ ‘Sell’ means to sell, exchange, give or dispose of to another, or to offer or agree to do the same.” (Penal Law § 220.00 [1].) The gravamen of the defendant’s motion to dismiss this count is that the information contains no allegation that the sale observed by the officer included the bag of marijuana. The defendant’s argument is correct. The information does not allege that the undercover officer saw the defendant hand Thomas the bag of marijuana. It states only that he saw the defendant hand him “a number of small white objects.” According to the information, the undercover officer did not observe the bag of marijuana until Thomas threw it to the ground. While these allegations may support a charge of possession of marijuana, they fail to allege any sale of marijuana within the meaning of Penal Law § 221.40. Consequently, that count of the information is dismissed.
II. Public Health Law § 3383 (2)
In regard to the Public Health Law count, the defendant argues that the information fails to sufficiently allege that he “represented” to the buyers, Thomas and Cook, that the “small white objects” he handed to them were a controlled substance, such “representation” being an essential element of Public Health Law § 3383 (2). Specifically, the defendant contends that, in order to survive a motion to dismiss, the information must allege that he either implicitly or explicitly communicated to the buyers, by way of a conversation, that the objects were a controlled substance. The defendant misapprehends the statute.
Public Health Law § 3383 (2) provides that “[i]t shall be unlawful for any person to manufacture, sell or possess with the intent to sell, an imitation controlled substance.” “Imitation controlled substance” is defined in subdivision (1) (c) of the same statute as:
“a substance, other than a drug for which a prescription is required . . . , that is not a controlled *441 substance, which by dosage or appearance, including color, shape and size and by a representation is represented to be a controlled substance, as defined in the penal law. Evidence of representations that the substance is a controlled substance may include but is not limited to oral or written representations by the manufacturer or seller, as the case may be, about the substance with regard to:
“(i) its price, nature, use or effect as a controlled substance; or
“(ii) its packaging in a manner normally used for illicit controlled substances; or “(in) markings on the substance.”
Thus, while a “representation” may take the form of an oral representation by the seller about the substance, the statute also provides that a “representation” “is not limited to” an oral or a written representation. A fair reading of the statute leads to the conclusion that a seller may “represent” a substance to be a controlled substance by its appearance and/or packaging alone, without the necessity of any conversation. This is made clear by the language which expressly states that an imitation controlled substance may be represented as a controlled substance “by dosage or appearance, including color, shape and size.” The language that follows, “and by a representation is represented to be a controlled substance,” is meaningful only if the “and” is read in the disjunctive, as “or.” Notably, the alternative form of proof then described in the statute, the oral or written representation, similarly may concern the “packaging in a manner normally used for illicit controlled substances” or “markings on the substance.” (Public Health Law § 3383 [1] [c] [ii], [iii].) If that provision of subdivision (1) (c) is read in the conjunctive, as the defendant would have it, other portions of the statute would be rendered meaningless. That is, the provision that an imitation substance may be represented as a controlled substance “by dosage or appearance, including color, shape and size” would be superfluous since “packaging” and “markings” are included later in the statute as possible subject matters of an “oral or written representation.” Thus, logic precludes any interpretation of the statute that requires both (1) proof that the seller represented the substance to be a controlled substance by its “color, shape and size,” and (2) proof that the seller made oral or written representations to the buyer about the substance in regard to its price, nature or effect, its packaging, or its markings.
*442 “It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other” (Matter of Notre Dame Leasing, LLC v Rosario, 2 NY3d 459, 464 [2004], quoting People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]) such that meaning and effect are given to all provisions of the statute. (See Matter of Beekman Hill Assn. v Chin, 274 AD2d 161 [1st Dept 2000]; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98.) A corollary rule is that all parts of a statute are to be harmonized with each other as well as with the general intent of the whole statute. (See Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp., 2 NY3d 524 [2004]; Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals, 97 NY2d 86 [2001]; Salamone v Wincaf Props., Inc., 9 AD3d 127 [1st Dept 2004]; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 92, 98.) Furthermore, “the letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 111, Comment, at 226-227; see Matter of Notre Dame Leasing, LLC v Rosario, supra; Matter of Pirro v Angiolillo, 89 NY2d 351 [1996].)
Applying these principles to Public Health Law § 3383, the court holds that the statute does not require that the seller converse with the buyer but provides that the packaging and markings on the substance may constitute prima facie evidence of a “representation” by the seller that the substance is a controlled substance. That is, subdivision (1) (c) of the statute must be read in the disjunctive as described above. Indeed, such an amendment to the statute has been proposed in the Legislature. (See 2005 NY Assembly Bill A 639.)*
*443 The instant information sufficiently alleges a violation of Public Health Law § 3383 (2) by alleging that the undercover officer, trained in the identification of drugs, believed the substance to be a controlled substance by his observation of its packaging. Indeed, the information provides the requisite “Dumas” language (see People v Dumas, supra) by alleging that, even prior to testing the white substance recovered, the undercover officer believed the substance he observed to be a controlled substance based upon “his professional training as a police officer in the identification of drugs, his prior experience as a police officer in drug arrests [and his] observations of the packaging which is characteristic of this type of drug.” It can reasonably be inferred from this allegation that the packaging of the substance was intended to make it appear to be a controlled substance. That is, the packaging constituted a “representation” by the defendant seller to the buyers that the substance was, in fact, a controlled substance. The undercover officer alleges that he was able to observe the packaging and it is settled law that a trained police officer may recognize a controlled substance merely by its packaging. (See People v Abad, 98 NY2d 12 [2002]; People v McRay, 51 NY2d 594 [1980]; People v Belliard, 309 AD2d 618 [1st Dept 2003]; People v Batista, 261 AD2d 218 [1st Dept 1999]; People v Thomas, 227 AD2d 351 [1st Dept 1996].)
The defendant hypothesizes that the buyers may have, in fact, intended to purchase a substance which resembled, but was not, a controlled substance, and may have been intending to use it at a political demonstration, November 2, 2004 being election day. A similar argument was rejected by the court in State v Castleman (116 NM 467, 863 P2d 1088 [1993]), which concerned a comparable statute. The defendant in that case, charged with selling a noncontrolled substance which she represented to be cocaine, challenged the statute as overbroad. Much like the defendant’s argument in this case, she hypothesized that the statute would prohibit citizens from selling “joints” filled with tea leaves to passersby as a fund-raiser and as a symbol of their displeasure with current drug laws. The court rejected the argument, pointing out that the use of tea *444 leaves in a political demonstration would not lead a reasonable person to believe the substance was, in fact, marijuana. (See also People v Matkovick, 101 Ill 2d 268, 461 NE2d 964 [1984], appeal dismissed 469 US 806 [1984].) Similarly, in the instant case, the defendant’s speculative scenario may present the basis of a trial strategy but does not support dismissal of the information on facial sufficiency grounds.
III. Conclusion
For the reasons set forth above, the defendant’s motion to dismiss the information is granted to the extent that the criminal sale of marijuana in the fourth degree count is dismissed as facially insufficient. The motion is denied as to the Public Health Law count.
The defendant’s motion to suppress physical evidence is granted to the extent that a Mapp/Dunaway hearing is ordered as to the “small white objects” and the currency, if any, recovered from the defendant. The dismissal of the marijuana sale count renders the suppression motion academic as to the marijuana.
The People are directed to furnish the defendant with the approximate location of the observation post, if any, or move forthwith for a protective order.
The defendant’s Sandoval motion is referred to the trial court.

 Comparable statutes prohibiting the sale of imitation controlled substances in other states define “representation” to include the appearance and/or packaging of the substance and do not require any conversation between the seller and buyer. While, of course, not controlling in this state, the comparable statutes are instructive in interpreting the New York statute.
For example, the New Jersey statute at issue in State in Interest of M.G. (307 NJ Super 348, 704 A2d 1025 [1998]), New Jersey Statutes Annotated § 2C:35-11, provides that the packaging of a substance in a manner normally used for the unlawful distribution of controlled dangerous substances or controlled substance analogs shall constitute prima facie evidence of an express or implied representation by a seller that the substance is a controlled substance.
The comparable Maryland statute, Maryland Code (1957), article 27, former § 286B (d), provides, in part, that for purposes of determining if the section *443 has been violated, the court shall consider “[wlhether the non-controlled substance was packaged in a manner normally used for the illegal distribution of controlled substances” and “[w]hether the physical appearance of the non-controlled substance is substantially identical to that of a controlled substance.” (See In re Timothy F., 343 Md 371, 381, 681 A2d 501, 506 [1996].)